[Cite as *Latz v. Latz*, 2020-Ohio-5139.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| KENNETH LATZ, | : | **O P I N I O N** |
| Petitioner-Appellant, | : | |
| - vs - | : | **CASE NO. 2020-G-0241** |
| ANDREA LATZ, | : | |
| Respondent-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2018 DV 00366.

Judgment: Affirmed.

*Joseph G. Stafford*, *Vincent A. Stafford*, and *Nicole A. Cruz*, Stafford Law Co., L.P.A., 55 Erieview Plaza, 5th Floor, Cleveland, Ohio 44114 (For Petitioner-Appellant).

*Scott S. Rosenthal*, Rosenthal, Thurman, Lane, LLC, North Point Tower, 1001 Lakeside Avenue, Suite 1720, Cleveland, Ohio 44114 (For Respondent-Appellee).

MARY JANE TRAPP, J.

{¶1}     Petitioner-appellant, Kenneth Latz ("Mr. Latz"), appeals the judgment of the Geauga County Court of Common Pleas overruling his objections and adopting the magistrate's denial of his petition for a domestic violence civil protection order ("DVCPO") for his five minor children with respondent-appellee, Andrea Latz ("Ms. Latz").

{¶2}     This case involves Ms. Latz's alleged acts of domestic violence against Mr. Latz that some of the children witnessed.  Mr. Latz contends that the trial court erred as a matter of law and abused its discretion in denying his petition for a DVCPO for the

children.  Specifically, Mr. Latz challenges the magistrate's finding that the children were not "endangered" under R.C. 2919.22(A) and its application of the law with respect to the alleged effect of Ms. Latz's conduct on the children.

{¶3}  After a careful review of the record and pertinent law, we find as follows:

{¶4}  (1) The magistrate's determination that none of the children was "endangered" under R.C. 2919.22(A) is not against the manifest weight of the evidence. The magistrate's finding that Ms. Latz's conduct did not create a substantial risk to their health or safety is supported by sufficient competent, credible evidence.

{¶5}  (2) The magistrate's determination that the none of the children was an "abused child" under R.C. 2151.031(D) was based on the applicable law.  The applicable statutes necessarily require evidence of a "behavioral, cognitive, emotional, or mental disorder" and causation.

{¶6}  Accordingly, the trial court did not abuse its discretion in adopting the magistrate's denial of the DVCPO.  Thus, we affirm the judgment of the Geauga County Court of Common Pleas, Domestic Relations Division.

**Substantive and Procedural History**

{¶7}  Mr. Latz and Ms. Latz married in 2006 and have five minor children, who at the time of the underlying proceedings ranged in age from 6 to 16.

{¶8}  On January 3, 2018, Mr. Latz filed a complaint for divorce in the trial court. The parties did not physically separate at that time and continued to reside together with the children at their home in Bainbridge Township.  Later that month, Mr. Latz began a relationship with another woman, whom he met online.  Ms. Latz subsequently discovered the relationship.

2

### *Alleged Domestic Violence*

{¶9}   Mr. Latz alleged that Ms. Latz committed acts of domestic violence against him that some of the children witnessed.

{¶10}  On April 15, Ms. Latz discovered Mr. Latz's relationship with the other woman by viewing pictures on Mr. Latz's phone.  According to Mr. Latz, Ms. Latz then struck him and made disparaging comments about the woman.  Mr. Latz left the house and spent the night at a hotel.

{¶11}  On the next day, on April 16, he returned to the house after taking the four younger children to dinner.  According to Mr. Latz, as he arrived, Ms. Latz encountered him while she was intoxicated.  They went into his office to have a private conversation, where Ms. Latz began crying, pleaded for him not to proceed with the divorce, and loudly threatened to kill herself within earshot of the children.  Ms. Latz also became physically violent toward him.  Their oldest child interceded by holding her back, and their middle child pleaded with Ms. Latz to stop.

{¶12}  According to Ms. Latz, she had just found out Mr. Latz was having an affair, which made her extremely upset.  She denied physically striking Mr. Latz and contends that she discussed the incident with the children afterwards.

{¶13}  On the evening of May 7, Mr. Latz returned to the house with their middle child following a baseball game.  According to Mr. Latz, Ms. Latz approached him in the house's mudroom area and appeared intoxicated.  She made a disparaging remark to Mr. Latz and began repeatedly telling him to leave the house.

{¶14}  Mr. Latz decided to stay in a hotel, which he had done frequently over the preceding months as a result of conflicts with Ms. Latz.  Mr. Latz began gathering his belongings and saying goodbye to the children.  Ms. Latz followed him throughout the

3

house and repeatedly yelled disparaging and inappropriate remarks at him, pushed him, slapped him in the face, and scratched him. Portions of the altercation occurred in the presence of two of the children, who were both crying.

{¶15} According to Ms. Latz, she was not intoxicated on May 7. Mr. Latz and she had planned to discuss the finances that evening. After their middle child went to bed, Mr. Latz told her he had no intentions of ever paying her bills. Mr. Latz was yelling in her face, standing on her pinky toe, and her pinky toenail was ripped off. They screamed back and forth until she slapped him once on the face. Two of the children came downstairs after the yelling, and she told them to go back upstairs.

{¶16} Mr. Latz eventually called the Bainbridge Police Department. Ms. Latz was arrested and spent the night in jail. She was charged with domestic violence in Chardon Municipal Court and subsequently pleaded guilty to disorderly conduct. The municipal court issued a domestic violence temporary protection order that excluded Ms. Latz from the house and prohibited her from contacting Mr. Latz or the children.

### DVCPOs

{¶17} On May 11, 2018, Mr. Latz filed a petition pursuant to R.C. 3113.31 in the trial court requesting a DVCPO naming himself and the parties' children as protected parties.

{¶18} The magistrate held an ex parte hearing and issue an ex parte DVCPO on the same day. The magistrate subsequently issued an agreed magistrate's order to provide Ms. Latz with parenting time and permission regarding certain school and extracurricular activities.

{¶19} In August 2018, the trial court issued a consent agreement and DVCPO naming Mr. Latz as a protected party for a term of five years. The magistrate issued a

4

modified ex parte DVCPO with respect to the children and scheduled the matter for a full evidentiary hearing.

### Full Evidentiary Hearing

{¶20} The matter proceeded to a full evidentiary hearing before the magistrate that was held over three days.

{¶21} Mr. Latz testified regarding Mr. Latz's alleged acts of domestic violence and played partial recordings of the April 16 and May 7 incidents that he had made with his iPhone.

{¶22} Mr. Latz also testified regarding alleged behavioral changes in the children in the months following the incident of May 7.

{¶23} According to Mr. Latz, the middle child, who has a history of behavioral issues, became more physically violent toward his siblings and Mr. Latz. In August, the police were ultimately called after the child became violent. In addition, the child said on a handful of occasions that he was going to kill himself.

{¶24} The oldest child, who has a history of mental health issues such as depression and anxiety, began making threats of violence against his siblings, parents, and Mr. Latz's mother and posted a photo on Instagram with a noose around his neck. In addition, the child's grades in school dropped, and there was significant absenteeism.

{¶25} The youngest child became clingier and more emotional, and he and an older sibling became more violent towards each other.

{¶26} Ms. Latz testified that following the issuance of the ex parte DVCPO, she was only permitted supervised visitation with the children of approximately nine hours per week and was not permitted to respond to their email or text communications. She denied

that any of her children threatened to kill themselves or that they exhibited violence in her home.

{¶27} Following the evidentiary hearing, the parties filed closing briefs.

### Denial of the DVCPO

{¶28} The magistrate filed a highly detailed, 18-page "findings of fact, conclusions of law, and decision." He concluded that Mr. Latz had not met his burden to prove by a preponderance of the evidence that Ms. Latz committed an act of domestic violence against any of the children under the grounds set forth in R.C. 3113.31. Therefore, the magistrate denied Mr. Latz's petition for a DVCPO with respect to the minor children and vacated and dissolved the ex parte DVCPO issued in May 2018.

{¶29} On the same day, the trial court issued a judgment entry (1) finding there was no error of law or other defect on the face of the magistrate's findings, conclusions, and decision; (2) adopting and approving the same; (3) finding that Mr. Latz failed to prove, by a preponderance of the evidence, that Ms. Latz committed any act of domestic violence against the parties' minor children; and (4) dissolving, vacating, and setting aside the prior ex parte DVCPOs from May and August 2018.

{¶30} Mr. Latz filed preliminary and supplemental objections to the magistrate's findings, conclusions, and decision, which Ms. Latz opposed.[1] The trial court issued a judgment entry finding Mr. Latz's objections to be without merit and affirming and adopting the magistrate's decision in its entirety.

---

1. Civ.R.65.1(F)(3)(b) provides that "[a] magistrate's denial or granting of a protection order after full hearing under this division does not constitute a magistrate's order or a magistrate's decision under Civ.R. 53(D)(2) or (3) and is not subject to the requirements of those rules." Instead, Civ.R. 65.1 authorizes the parties to file objections to "*a court's adoption* * * * of a magistrate's denial or granting of a protection order after a full hearing." (Emphasis added.) Civ.R. 65.1(F)(3)(d)(i).

{¶31} Mr. Latz appealed and presents the following assignment of error for our review:

{¶32} "The trial court erred as a matter of law and abused its discretion by denying the appellant's petition for domestic violence civil protection order regarding the parties' minor children."[2]

**Standard of Review**

{¶33} This court reviews a trial court's adoption of a magistrate's grant or denial of a DVCPO for an abuse of discretion. *See Baltes v. Baltes*, 11th Dist. Trumbull No. 2011-T-0117, 2012-Ohio-4890, ¶19; *Hynd v. Roesch*, 11th Dist. Ashtabula No. 2015-A-0063, 2016-Ohio-7143, ¶19.

{¶34} An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error (although harmless errors and errors not preserved for appellate review are not reversible). *Id.* at ¶67, fn. 2. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶67.

---

2. Mr. Latz appealed the trial court's judgment entry overruling his objections and reiterating its adoption of the magistrate's denial of the DVCPO. However, the trial court's initial adoption of the magistrate's denial of the DVCPO constitutes the final appealable order for purposes of this appeal. *See* Civ.R. 65.1(G).

**Legal Standards**

{¶35} We begin by setting forth the applicable legal standards governing a DVCPO.

{¶36} According to the Supreme Court of Ohio, "[t]he General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case." *Felton v. Felton*, 79 Ohio St.3d 34, 37 (1997). "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Id.* at paragraph two of the syllabus. After a full hearing, "the court may grant any protection order * * * to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1).

{¶37} The definition of "domestic violence" includes, in pertinent part, "[t]he occurrence of one or more of the following acts against a family member or household member: * * * [c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code * * *." R.C. 3113.31(A)(1)(a)(iii).

{¶38} The definition of "abused child" in R.C. 2151.031 includes, in pertinent part, any child who "[i]s endangered as defined in Section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child" or "[b]ecause of the acts of his parents * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare." R.C. 2151.031(B) and (D).

8

{¶39} Thus, for purposes of R.C. 3113.31, a child may be subjected to domestic violence and entitled to a DVCPO if the child (1) is endangered within the meaning of R.C. 2919.22 or (2) suffers mental injury that harms or threatens to harm the child's health or welfare as the result of the action of the child's parent. *Schottenstein v. Schottenstein*, 10th Dist. Franklin No. 02AP-842, 2003-Ohio-5032, ¶15.

### Endangered Children

{¶40} Mr. Latz challenges the magistrate's determination that none of the children was "endangered" under R.C. 2919.22(A).

{¶41} R.C. 2919.22(A), entitled "[e]ndangering children," states, in pertinent part, that "[n]o person, [1] who is the parent * * * of a child under eighteen years of age * * * [2] shall create a substantial risk to the health or safety of the child, [3] by violating a duty of care, protection, or support."

{¶42} "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶43} According to the Supreme Court of Ohio, R.C. 2919.22(A) "is concerned with circumstances of neglect." *State v. Kamel*, 12 Ohio St.3d 306, 309 (1984). "Manifestly, such neglect is characterized by acts of omission rather than acts of commission." *Id.* "Accordingly, an inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." *Id.*

9

***Substantial Risk to the Children's Health and Safety***

{¶44} Mr. Latz contends that the evidence established that Ms. Latz created a substantial risk to the children's health and safety by "engaging in physical and verbal abuse and attempting to harm herself in [their] presence"

{¶45} The magistrate heard live testimony in this matter and is therefore entitled to deference as to his factual findings emanating from the evidentiary hearing. *Bode v. Concord Twp.*, 11th Dist. Lake No. 2018-L-116, 2019-Ohio-5062, ¶91, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The magistrate's factual findings, therefore, will not be disturbed unless they are against the manifest weight of the evidence. *Id.*, citing *Seasons Coal* at 80.

{¶46} "[A]n appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court." *Myers v. Garson*, 66 Ohio St.3d 610, 616 (1993); *see Felton*, *supra*, at 679 ("[O]ur review of the record shows sufficient, credible evidence to support a finding that the appellant was in danger of domestic violence").

{¶47} In reviewing a manifest weight claim, a court of appeals should be "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co.* at 79-80. "The underlying rationale of giving deference to the findings of the [fact finder] rests with the knowledge that the [fact finder] is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at 80.

{¶48} In this case, after extensively summarizing the evidence, the magistrate concluded that Mr. Latz failed to establish that Ms. Latz's conduct created a risk to any child's health or safety for the following reasons:

{¶49} "[Mr. Latz] pointed to no health condition that was induced by [Ms. Latz]'s actions. There is some evidence that one or more of the children tried to restrain [Ms. Latz] from hitting and pushing [Mr. Latz]. However, this Magistrate finds it significant that no child incurred any physical injury in doing so, which suggested that Ms. Latz took care to keep the children out of her argument with [Mr. Latz]."

{¶50} Mr. Latz contends that the magistrate "improperly disregarded" the events of April 16 in making this determination.

{¶51} Generally, unless the record affirmatively demonstrates otherwise, we presume the regularity of the proceedings below and that the trial court considered all parts of the record. *Higgins v. Buehrer*, 1st Dist. Hamilton No. C-160288, 2016-Ohio-7214, ¶8. Here, the magistrate expressly based his denial of the DVCPO on "consideration of all the evidence." In his findings of fact, he specifically referenced and described the April 16 incident.

{¶52} Mr. Latz further contends that the magistrate held that "witnessing an 'argument' does not render a child an 'abused child' or 'endangered child.'"

{¶53} The magistrate did state such a holding. And contrary to Mr. Latz's assertion, the magistrate did not characterize Ms. Latz's conduct as involving merely "an argument," nor did the magistrate minimize the seriousness of her conduct. While Ms. Latz's conduct was inappropriate and inexcusable, the magistrate placed it in context.

{¶54} As the magistrate stated in his findings of fact, the relationship between the parties was deteriorating for some time before the events of May 7. Mr. Latz filed an

11

action for divorce in early January, but the parties continued to reside together with the children.  Mr. Latz began a relationship with another woman later that month, which "greatly upset" Ms. Latz and "exacerbated the difficulties and tensions between the parties."

{¶55}  As the magistrate further found, the atmosphere in the Latz home during the period January through May 2018 was "tense" and "erupted into arguments and physical confrontations in February and April 2018."  Ms. Latz was "distraught over the divorce proceedings and the imminent end of the parties' marriage."  In April, "in the heat of the argument," Ms. Latz told Mr. Latz that she would kill herself.

{¶56} Sufficient competent, credible evidence in the record supports the magistrate's findings; namely Mr. Latz's and Ms. Latz's testimony and the recordings of the April 16 and May 7 incidents.

### *Case Law*

{¶57}  Mr. Latz cites several decisions from other appellate districts that he contends are factually similar and compel a contrary "substantial risk" determination.

{¶58}  For instance, Mr. Latz cites the Eighth District's decision in *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, as "clearly and unequivocally" stating that "children who are physically present during period of intrafamily domestic violence are 'abused children'" under R.C. 3113.31."

{¶59}  *Allan* does not contain this broad legal proposition.  Rather, the Eighth District's decision was based on the specific facts in the case as established by the evidence presented at a full hearing.  *See id.* at ¶39 ("These facts also establish that the children were endangered children * * *.").

12

{¶60} Specifically, the Eighth District found sufficient credible evidence that children were "endangered" where the respondent, in their presence, slapped his spouse; dragged her down the hallway by her hair; choked her until she could not breath and urinated on herself; threw and broke many items in the house, causing broken glass or ceramic to be all over the house; went on a rampage in the bedroom, smashing everything on the dresser; attempted to slam the dresser mirror on his spouse and children; and pounded the bed's headboard against the wall until it broke while his spouse and children were on the bed. *Id.* at ¶36-37, 39.

{¶61} In this case, the magistrate rejected Mr. Latz's reliance on *Allan* for the following reasons:

{¶62} "In *Allan*, the respondent father's actions threatened both the petitioner mother and the children with imminent serious physical harm * * *. As the Court put it, the children were victims of domestic violence because they 'were put in the line of fire of the father's "rampage" and physical abuse against [the mother].' They were also endangered children because of the same violent acts that posed a substantial risk of harming them physically."

{¶63} The magistrate concluded that "[n]othing in *Allan* stands for the proposition that if children witness an argument between parents in which one party repeatedly slaps another, without the added element of a high potential for the infliction of actual physical harm on the children, the children are necessarily endangered or abused."

{¶64} Upon review of the record, we find that the evidence supports the magistrate's distinguishing of *Allan*.

{¶65} Mr. Latz also cites the Fourth District's decision in *Martindale v. Martindale*, 4th Dist. Athens No. 17CA5, 2017-Ohio-9266, for the proposition that "domestic violence

13

occurs against children when the parties acknowledge that they have a violent home and also when they admit that the children were present during the violence, since these things place the health and safety of the children a[t] substantial risk."

{¶66} In *Martindale*, the trial court granted a DVCPO in favor of the petitioner-spouse and two of the parties' children following a new trial. *Id.* at ¶13. On appeal, the Fourth District noted that its review of the case was limited because the respondent failed to request findings of fact and conclusions of law from the trial court. *See id.* at ¶22. The court stated that it would affirm the trial court's judgment "if evidence in the record supports it." *Id.* at ¶24.

{¶67} Relevant here, the court determined that the trial court did not abuse its discretion is adding two of the parties' minor children to the DVCPO based on the parties' testimony acknowledging "the home environment was violent" and the respondent's admission that the children were present during an incident of physical violence between the parties. *Id.* at ¶8, 55.

{¶68} Mr. Latz did not cite *Martindale* in his closing brief, so the magistrate did not address it. However, given the limited facts set forth in the opinion and its distinguishable procedural posture, *Martindale* does not compel a conclusion that violence in the home and children witnessing physical violence are "endangered" in all instances.

{¶69} Mr. Latz further cites the Eighth District's decision in *M.E. v. J.M.*, 8th Dist. Cuyahoga No. 107273, 2019-Ohio-1437, where the court found that the trial court abused its discretion in failing to include the petitioner's infant daughter as a protected person in a DVCPO against her husband. *Id.* at ¶24.

{¶70} In *M.E.*, the petitioner's testimony included multiple accounts of the husband's physical violence against her within close proximity of their daughter, who was

14

an infant and still breastfeeding. *Id.* at ¶24. Specifically, the petitioner testified that she called police to the parties' house shortly after their daughter's birth following an altercation between the parties. *Id.* at ¶3. During another incident, the husband pulled her out of the apartment by her hair and attempted to grab the baby from her. *Id.* at ¶4. Over the course of the marriage, the husband engaged in hair pulling, pushing, rapping her on the head with his knuckles, and drunkenly forcing her to engage in sexual intercourse; held their daughter incorrectly; and left the daughter unattended outside in the winter for approximately thirty minutes at a time. *Id.* at ¶8.

{¶71} The Eighth District determined that even if the petitioner's testimony did not contain credible evidence that the respondent had engaged in acts of domestic violence directly against the daughter, the testimony was sufficient to conclude that the respondent had "repeatedly created a substantial risk to his daughter's health and safety, in accord with R.C. 2919.22, both by virtue of her proximity to domestic violence and the persistent threat against her mother." *Id.* at ¶24.

{¶72} The magistrate rejected Mr. Latz's reliance on *M.E.*, finding the case to be "unpersuasive" because its "summary of the facts * * * is so sparse and conclusory that it is impossible to follow the reasoning of the appellate court."

{¶73} While we do not entirely agree with the magistrate's characterization of *M.E.*, we find that the evidence supports the magistrate's distinguishing it from the present case.

{¶74} In light of our deferential standard of review, we cannot say that the magistrate's "substantial risk" determination is against the manifest weight of the evidence.

### *Duty of Care, Protection, or Support*

{¶75} Even if we were to find that the magistrate's "substantial risk" determination is against the manifest weight of the evidence, Mr. Latz has not demonstrated reversible error. The magistrate also found that that children were not "endangered" under R.C. 2919.22(A) because Mr. Latz offered no evidence that Ms. Latz violated "a duty of care, protection, or support" with respect to the children. Mr. Latz has presented no argument on appeal regarding this element.

### Abused Children

{¶76} Mr. Latz also challenges the magistrate's determination regarding the alleged effect of Ms. Latz's conduct on the children.

{¶77} According to Mr. Latz, "expert testimony is not required to find *mental distress*" under R.C. 3113.31. (Emphasis added.) He further asserts that a petitioner does not have to establish "actual treatment or diagnosis of a mental disorder" and that a trial court "is permitted to rely on its knowledge and experience in determining whether *mental distress* had been caused." (Emphasis added.) In essence, Mr. Latz argues that the magistrate committed an error of law.

{¶78} Mr. Latz's argument is based on a misunderstanding of the magistrate's decision and/or the applicable law.

{¶79} The magistrate referred to expert testimony in the context of whether the evidence established any of the children was an "abused child" under R.C. 2151.031(D), the elements of which are (1) *"[b]ecause of* the acts of his parents," (2) the child suffers "physical or *mental injury* that harms or threatens to harm the child's health or welfare." (Emphasis added.) "Mental injury" is defined as "any behavioral, cognitive, emotional, or mental *disorder* in a child *caused by* an act or omission that is described in section

16

2919.22 of the Revised Code [the child endangering statute] and is committed by the parent or other person responsible for the child's care."  (Emphasis added.)  R.C. 2151.011(B)(24).

{¶80}  The magistrate concluded that the evidence (1) did not demonstrate that Ms. Latz's interactions with Mr. Latz, i.e., the arguments and her slapping, hitting him, resulted in the children or any child suffering a "physical or mental injury" and (2) was insufficient to establish a causal link between Ms. Latz's actions and the children's subsequent behavior.

{¶81}  By contrast, "mental distress" is relevant in determining whether a respondent committed domestic violence through menacing by stalking under R.C. 2903.211(A), which Mr. Latz did not allege.  Therefore, Mr. Latz's argument and the cases cited in support are inapplicable.

{¶82}  Even if we construe Mr. Latz's argument as asserting that the magistrate misinterpreted the definition of an "abused child" under R.C. 2151.031(D), his argument is without merit.

{¶83}  Based on the plain statutory language, the magistrate properly determined that Mr. Latz was required to produce evidence of a "behavioral, cognitive, emotional, or mental disorder" and causation in order to establish that any of the children was an "abused child" under R.C. 2151.031(D).

{¶84}  Contrary to Mr. Latz's assertion, the magistrate did not hold that expert testimony was required in all instances.  Rather, the magistrate found Mr. Latz's opinion as to the cause of the children's behavior to be "not credible."  We defer matters of witness credibility to the trier of fact.  (Citations omitted.)  *Baltes, supra*, at ¶31.  The trier of fact

is entitled to believe all, part, or none of the testimony of any witness. (Citation omitted.) *Hynd, supra*, at ¶29.

{¶85} The magistrate cited *Schottenstein*, *supra*, as an example of what Mr. Latz could have presented to establish causation. In that case, the petitioner presented extensive medical, psychiatric, and psychological testimony diagnosing the child's disorders and connecting the respondent's actions to the child's conditions.

{¶86} According to the magistrate, similar evidence was necessary in this case because the evidence presented at the hearing suggested other causes for the children's behavioral issues:

{¶87} "Without explicitly saying so, [Mr. Latz] invites the Court to assume that the children would have been well-adjusted, happy, academically successful, and cooperative, and calmly accepting the parties' impending divorce, the disintegration of their family, the arrest of their mother, the period of separation from her, with perfect equanimity – but for [Ms. Latz]'s conduct. He offered no evidence suggesting that that was or could have been the case. Some of the children had academic and behavioral difficulties before [Mr. Latz] filed the divorce case. * * * [Mr. Latz]'s argument is in essence, 'post hoc, ergo propter hoc' reasoning – 'after this, therefore cause of this.' Such an argument does not establish causation. * * * It is at least equally likely that the children were reacting negatively to the stress and tension of the parties' impending divorce, to seeing their mother arrested and jailed, and then to being deprived of contact with her for significant periods."

{¶88} The magistrate also addressed the fact that Mr. Latz cited numerous academic journal articles and media reports in his closing argument brief to generally establish that children who witness domestic violence suffer mental and emotional harm.

{**¶89**} The magistrate rejected this argument on procedural grounds. The magistrate determined that Mr. Latz was attempting to present expert opinions other than in the course of the hearing. However, none of the authors that Mr. Latz cited has been qualified as an expert in the field; there was no showing that the articles met the *Daubert* standard for admission of expert opinions; and Mr. Latz did not offer the evidence at the hearing where it could have been subject to cross examination.

{**¶90**} The Ohio Rules of Evidence "govern proceedings in the courts of this state," subject to specific exceptions not applicable here. *See* Evid.R. 101(A) and (B). Thus, hearings on a petition for a DVCPO are subject to the rules of evidence. *See, e.g., Kuhn v. Kuhn,* 11th Dist. Lake No. 2012-L-099, 2013-Ohio-5807, ¶39-54.

{**¶91**} Evid.R. 803(18) contains a "learned treatise" exception to the hearsay rule. It provides, in relevant part, that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * [t]o the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

{**¶92**} As the drafters of Evid.R. 803(18) recognized, the rule "contains a number of safeguards against unreliability and misuse. Misunderstanding is guarded against by the fact that the statements in learned treatises come to the trier of fact only through the testimony of qualified experts who are on the stand to explain and apply the material in the treatise. The rule provides that the treatise may be read into evidence but not received

19

as an exhibit to prevent the trier from giving it excessive weight or attempting to interpret the treatise by itself. The rule applies only to a learned treatise found by the judge to be a 'reliable authority' under Evid.R. 104(A)." 2006 Staff Note to Evid.R. 803; *Moretz v. Muakkassa*, 137 Ohio St.3d 171, 2013-Ohio-4656, ¶63.

{¶93} The magistrate's procedural determinations are consistent with the admissibility requirements of Evid.R. 803(18).

{¶94} Despite the procedural irregularities, the magistrate reviewed the substance of the cited articles and further determined that they did not support Mr. Latz's argument. Specifically, one of the papers suggested that exposure to intrafamily domestic violence does not necessarily or always affect every child who witnesses such behavior. Further, the materials did not differentiate between the different types of conduct encompassed within the term "domestic violence."

{¶95} Therefore, the magistrate applied the proper legal requirements in determining whether any of the children was an "abused child" under R.C. 2151.031(D).

{¶96} As a final note, this court recognizes that "[t]he consequences of domestic violence are serious and severe" and that "[p]rotection orders can be an effective tool" to respond to "the immediate needs of the victims." *Felton* at 45-46. We do not intend to minimize Mr. Latz's position or Ms. Latz's conduct.

{¶97} As indicated, Ms. Latz consented to a DVCPO naming Mr. Latz as a protected party. However, the magistrate, who observed the witnesses and heard their testimony first-hand, found that Mr. Latz had failed to prove the necessary statutory elements by a preponderance of the evidence to establish that the children were "abused" or "endangered."

{¶98} We are unable to conclude that the magistrate's determination that none of the children was "endangered" under R.C. 2919.22(A) is against the manifest weight of the evidence. Further, the magistrate's determination that none of the children was an "abused child" under R.C. 2151.031(D) was based on the applicable law.

{¶99} Accordingly, the trial court did not abuse its discretion in adopting the magistrate's denial of the DVCPO.

{¶100} Mr. Latz's sole assignment of error is without merit.

{¶101} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.