[Cite as *In re L.K.*, 2025-Ohio-5331.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: L.K. | : | APPEAL NO. | C-250179 |
| | | TRIAL NO. | F/24/802 Z |
| | : | | |
| | : | | |
| | | *JUDGMENT ENTRY* | |
| | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed to Appellee the Hamilton County Department of Job and Family Services.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/26/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *In re L.K.*, 2025-Ohio-5331.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: L.K. | : | APPEAL NO. C-250179 |
| | | TRIAL NO. F/24/802 Z |
| | : | |
| | : | *O P I N I O N* |
| | : | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed in Part and Reversed in Part

Date of Judgment Entry on Appeal: November 26, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Klarysa Benge*, Assistant Public Defender, for Appellee Guardian ad Litem,

*Wood + Lamping, LLP,* and *Scott A. Hoberg,* for Appellant Mother.

**CROUSE, Presiding Judge.**

{¶1} Appellant Mother appeals from the juvenile court's judgment overruling her objections to the magistrate's decision and adjudicating her child L.K. dependent and neglected. In a single assignment of error, Mother argues that the juvenile court's determination that L.K. was neglected was against the manifest weight of the evidence.

{¶2} Following our review of the record, we agree with Mother. The manifest weight of the evidence failed to establish that L.K. lacked adequate parental care or that, because of Mother's omissions, he suffered a physical or mental injury that harmed or threatened to harm his health or welfare. We accordingly reverse the juvenile court's adjudication of neglect.

## I. Factual and Procedural History

{¶3} On June 3, 2024, the Hamilton County Department of Job and Family Services ("HCJFS") filed a complaint seeking temporary custody of L.K. The complaint alleged that L.K. was neglected, abused, and dependent. HCJFS also filed a motion for an interim order of temporary custody and an affidavit in support of that motion. On June 3, 2024, a magistrate granted the motion for an interim order of temporary custody.

{¶4} On September 3, 2024, the parties appeared before the magistrate for an adjudication and disposition hearing. At that hearing, the parties stipulated to the veracity of the allegations in the complaint, subject to several modifications that were provided to the court.

{¶5} The complaint, as stipulated to, provided that HCJFS had received an "intake" on May 10, 2024, in which Mother reported that she was suicidal, wanted to die, and "can't do it anymore." Mother reported that she had screamed at L.K. and that L.K. was afraid of her. She further reported that she believed L.K., who was then nine

years old, needed a more stable parent, and that she had left the house without L.K.

{¶6} The complaint provided that Mother had made multiple concerning comments to L.K., including calling him stupid and saying, "[Y]ou suck," "I hope you feel how it feels to not be loved," and that she "hoped he lives a lonely life like her" and "feel[s] how it feels to be taken advantage of." It also described an incident in which Mother yelled at L.K. for not completing a school project, called him a "spoiled brat," and threw his vitamins on the floor. Mother cried following this incident, and when L.K. asked Mother why she was crying, Mother responded, "[Y]ou!"

{¶7} The complaint further stated that an out-of-home safety plan had been implemented for L.K. on May 10, 2024, but that it had been disrupted, in part, because of disagreements concerning the care provider arranging for Mother to see L.K. The disruption of this safety plan led to HCJFS filing the complaint alleging that L.K. was dependent, neglected, and abused.

{¶8} The complaint contained further details about Mother's mental health. It stated that police had been dispatched twice to Mother's home the weekend that the safety plan was implemented in response to suicidal ideation from Mother. Both times, Mother appeared fine and declined services.

{¶9} With respect to L.K., the complaint provided that he was a "twice exceptional child" that had special needs, and that he suffered from ADHD, general anxiety disorder, intermittent-explosive disorder, and obsessive-compulsive disorder. It further stated that he received occupational and speech therapy, and that his mental health necessitated therapeutic resources.

{¶10} The parties agreed that these stipulated facts established that L.K. was dependent, but they submitted for the magistrate's determination whether they established that L.K. was neglected and abused. The parties also agreed that L.K.

4

should be remanded into Mother's custody with orders of protective supervision.

{¶11} The magistrate issued an entry adjudicating L.K. dependent and neglected and dismissing the allegation of abuse. She further terminated the interim order of temporary custody to HCJFS and remanded custody of L.K. to Mother, with orders of protective supervision. These orders included that Mother allow "[a]ccess to HCJFS/GAL," that Mother and L.K. continue to engage in mental-health services, that L.K. enroll in school and attend regularly, that Mother utilize respite care as needed, that Mother help facilitate visits with Father, and that she cooperate with intensive in-home services.

{¶12} Mother filed a partial objection to the magistrate's decision. She argued that the finding of neglect was not supported by the stipulated facts, but she did not contest or object to the finding that L.K. was dependent. Both HCJFS and L.K.'s guardian ad litem ("GAL") filed responses to Mother's objection, arguing that the facts as stipulated to by the parties supported a finding of neglect.

{¶13} On February 18, 2025, the juvenile court issued a decision overruling Mother's objection to the magistrate's decision and finding that the magistrate correctly determined that L.K. was neglected pursuant to R.C. 2151.03(A)(2) and (6). The court stated, "[T]he stipulations entered were sufficient to find that the child lacks adequate parental care because of the faults or habits of the child's parents, and that because of the omissions of the child's parent, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." In support of its determination, the juvenile court particularly noted that the parties had stipulated that Mother reported she had left home without the child, that she had made comments to L.K. such as "you suck," and that L.K. was afraid of her. The juvenile court adopted the decision of the magistrate as the judgment of the court.

{¶14} Mother now appeals.

## II. Adjudication of Neglect

{¶15} In her sole assignment of error, Mother argues that the juvenile court's determination that L.K. was neglected was against the manifest weight of the evidence. As Mother has not challenged the juvenile court's adjudication of L.K. as dependent, this opinion addresses only the court's finding of neglect.

{¶16} A determination of neglect must be supported by clear and convincing evidence. *In re S. Children*, 2024-Ohio-538, ¶ 24 (1st Dist.); Juv.R. 29(E)(4) (providing that matters concerning dependency, abuse, and neglect must be determined by clear and convincing evidence). Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 2008-Ohio-4825, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶17} When reviewing a challenge to the manifest weight of the evidence, we must "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the [juvenile] court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re A.B.*, 2015-Ohio-3247, ¶ 16 (1st Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12.

{¶18} L.K. was adjudicated neglected under R.C. 2151.03(A)(2) and (6). We address each finding in turn.

### A. R.C. 2151.03(A)(2)

{¶19} We first consider the juvenile court's determination that L.K. was neglected under R.C. 2151.03(A)(2). Pursuant to this provision, a child is neglected when the child "lacks adequate parental care because of the faults or habits of the

6

child's parents, guardian, or custodian."

{¶20} The term "adequate parental care" is defined in R.C. 2151.011(B)(1) as "the provision by a child's parent or parents . . . of adequate food, clothing, and shelter to ensure the child's health and physical safety and the provision by a child's parent or parents of specialized services warranted by the child's physical or mental needs."

{¶21} In *In re Riddle*, 1997-Ohio-391, ¶ 20, the Ohio Supreme Court stated that "a neglect case, particularly one under R.C. 2151.03(A)(2), does require an inquiry into the 'faults or habits' of the caregiver. The ultimate finding required under R.C. 2151.03(A)(2) is that the child lacks proper (or adequate) parental care due to those faults or habits."

{¶22} This court has found that a child lacked adequate parental care and was neglected under R.C. 2151.03(A)(2) where a parent allowed the child to sleep unsupervised in the same home as the child's father after the child disclosed sexual abuse by the father, *In re C.A. Children,* 2020-Ohio-5243, ¶ 37 (1st Dist.), and where children were placed on restrictive diets that negatively impacted their growth and general subsistence, *In re S. Children*, 2024-Ohio-538, at ¶ 34 (1st Dist.). In contrast, the Ninth Appellate District held that a determination of neglect under R.C. 2151.03(A)(2) was against the manifest weight of the evidence where the record contained no testimony "that [the child's] home, food, or clothing was inadequate," that the child "was malnourished, or that his clothing was ill-fitting or inappropriate," or that the child "had any special medical needs that were not being met by Mother." *In re C.S.*, 2012-Ohio-2884, ¶ 15 (9th Dist.).

{¶23} The stipulated facts in this case are more akin to those in *In re C.S.* than those in *In re C.A. Children* and *In re S. Children*, and they fail to establish that L.K. lacked adequate parental care. None of the stipulated facts show that Mother failed to

provide L.K. with food, clothing, shelter, or specialized services warranted by L.K.'s physical or mental needs. Further, the record reflects that the magistrate acknowledged that L.K. had received services before he was removed from Mother's care.

{¶24} In upholding a finding of neglect under this provision, the juvenile court noted that Mother had reported that she had left home without the child, that she had made comments to L.K. such as "you suck," and that L.K. was afraid of her. We recognize that Mother's comments had a negative impact on L.K. But the manner in which Mother spoke to L.K. is a concern separate and apart from whether she provided him "adequate food, clothing, and shelter," or "specialized services" to meet his needs. *See* R.C. 2151.011(B)(1).

{¶25} Nor can the fact that Mother left the house without L.K. when she called HCJFS to report that she was suicidal and needed help support a finding of neglect under this provision. The record contains no indication as to how long L.K. was home on his own or that Mother had left the home without him on any other occasion. This isolated incident of leaving a nine-year-old child home alone does not establish that the child lacked adequate parental care.

{¶26} We accordingly hold that, on this record, the juvenile court's finding that L.K. was neglected under R.C. 2151.03(A)(2) was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

### B. R.C. 2151.03(A)(6)

{¶27} We next consider the juvenile court's determination that L.K. was neglected under R.C. 2151.03(A)(6), which provides that a neglected child is one "[w]ho, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or

8

welfare."

**{¶28}** The plain language of this subdivision of the statute requires that the child's injury be caused by a parent's *omission*. *See, e.g., In re M.E.*, 2017-Ohio-2841, ¶ 18-19 (5th Dist.) (upholding a trial court's finding that a child was neglected under R.C. 2151.03(A)(6) where the child fell out of a third-story window because father had failed to adequately supervise her); *In re Bolser*, 2000 Ohio App.LEXIS 260, *16-17 (12th Dist. Jan. 31, 2000) (upholding a finding of neglect under R.C. 2151.03(A)(6) where the parent failed to provide the child with proper medical treatment and follow-up care).

**{¶29}** The stipulated facts in this case do not allege any omission on Mother's part that resulted in L.K. suffering a physical or mental injury. Rather, the stipulated facts allege various *actions* taken by Mother, including screaming at L.K., leaving the house without him, and throwing L.K.'s vitamins. In the absence of an omission on Mother's part, L.K. could not have been adjudicated neglected under R.C. 2151.03(A)(6), and the juvenile court's determination that L.K. was neglected was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

**{¶30}** But even if Mother's behavior could be characterized as an omission, or if a parent's actions, rather than omissions, *could* support a finding of neglect under this paragraph of the statute, we would reach the same result with respect to the juvenile court's finding of neglect because the stipulated facts failed to establish that L.K. suffered a physical or mental injury.

**{¶31}** The stipulated facts in this case contain no allegation that L.K. suffered a physical injury. Consequently, L.K. could only have been adjudicated neglected under this provision if, because of Mother's conduct, he suffered a mental injury that

harmed or threatened to harm his health or welfare.

{¶32} The term "mental injury" is defined in R.C. 2151.011(B)(24) as "any behavioral, cognitive, emotional, or mental disorder in a child caused by an act or omission that is described in section 2919.22 of the Revised Code and is committed by the parent or other person responsible for the child's care." The referenced code provision, R.C. 2919.22, prohibits endangering children. It provides in relevant part, "No person, who is the parent . . . of a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A).[1]

{¶33} The stipulated facts in this case provided that L.K. suffered from ADHD, general anxiety disorder, intermittent-explosive disorder, and obsessive-compulsive disorder. They further provided that Mother screamed at L.K. and made disparaging and discouraging comments towards him, and that Mother reported that L.K. was afraid of her.

{¶34} Even if we determined that Mother's disparaging comments, made to a child with multiple known mental-health and behavioral issues, "create[d] a substantial risk to the health or safety of [L.K.], by violating a duty of care, protection, or support," sufficient to impose criminal liability under R.C. 2919.22(A), the juvenile court could not have found that L.K. suffered a mental injury, and consequently that he was neglected under R.C. 2151.03(A)(6), unless the record *also* established that L.K. suffered from a "behavioral, cognitive, emotional, or mental disorder" that was "caused by" Mother's conduct. *See* R.C. 2151.011(B)(24).

---

[1] R.C. 2919.22(B) and (C) are clearly inapplicable to the facts of this case and need not be discussed.

**{¶35}** Case law provides little guidance on when a parent's conduct causes a child to suffer a mental injury for purposes of R.C. 2151.03(A)(6). Some guidance can be found, however, in cases analyzing whether a child was an abused child under R.C. 2151.031(D), which provides that an abused child is one who "[e]xhibits evidence of any physical *or mental injury* or death." (Emphasis added.)

**{¶36}** In *Latz v. Latz*, 2020-Ohio-5139 (11th Dist.), the court considered whether the evidence supported a determination that a child was an abused child pursuant to R.C. 2151.031(D). When discussing the definition of mental injury in R.C. 2151.011(B)(24), the same definition that we are applying in the case at bar, the court stressed the element of causation, stating that the parent's actions must have caused the behavioral, cognitive, emotional, or mental disorder in the child. *Id.* at ¶ 79 and 83. The court ultimately upheld the lower court's determination that the children had not suffered a mental injury from witnessing their mother commit acts of domestic violence against their father, and that the children were not abused. *Id.* at ¶ 80 and 98.

**{¶37}** *In re N.C.*, 2009-Ohio-4514 (9th Dist.), is also instructive. In that case, a child services agency had alleged that two children were abused under R.C. 2151.031(D) because their father had exposed them to profane and sexually graphic language in podcasts that he had created.[2] *Id.* at ¶ 2. The trial court determined that the children were not abused under this provision. *Id.* at ¶ 5. The Ninth District affirmed the trial court, stating,

> While everyone who testified at the adjudication hearing expressed concern about N.C. and G.C.'s exposure to the content of Father's podcasts, no one testified that N.C. and G.C. had actually suffered any

---

[2] The agency had also alleged that the children were neglected and dependent under several other revised code provisions and subdivisions that are not relevant to the case at bar.

harm (mental, emotional, psychological, or otherwise) as a result. Any reasonable reviewer of Father's podcasts would agree with Dr. Esson's conclusion that they amount to extremely poor judgment and decision-making on Father's part and that the children and Mother were very uncomfortable with the graphic language used. Without additional evidence, however, these conclusions alone do not support a finding of abuse, dependency, or neglect.

*Id.* at ¶ 16.

**{¶38}** Turning back to the case at bar, the stipulated facts do not establish that Mother's behavior, including the disparaging comments that she made to L.K., *caused* any of L.K.'s mental-health or behavioral issues or *caused* him to suffer from a behavioral, cognitive, emotional, or mental disorder.

**{¶39}** Appellees HCJFS and L.K.'s GAL contend that the fact that Mother reported that L.K. was afraid of her established that L.K. suffered a mental injury. The GAL further argues that Mother's failure to address her own behavior and mental-health needs created an unsafe environment where L.K. suffered a mental injury that harmed or threatened to harm his health and welfare. We cannot agree.

**{¶40}** The fact that L.K. was afraid of Mother does not establish that he suffered a mental injury, i.e., a behavioral, cognitive, emotional, or mental disorder caused by Mother's actions. *See* R.C. 2151.011(B)(24). The term "disorder" has been defined as a "group of symptoms involving abnormal behaviors or physiological conditions, persistent or intense distress, or a disruption of physiological functioning." APA Dictionary of Psychology, https://dictionary.apa.org/disorder (accessed Nov. 13, 2025) [https://perma.cc/5P8F-TF96]. We cannot hold that L.K.'s fear of Mother, particularly absent any elaboration of how that fear manifested itself, falls within this

definition.

**{¶41}** The manner in which Mother spoke to L.K. was inappropriate. But the stipulated facts simply fail to establish that any act or omission by Mother, including her comments to L.K. and her failure to address her own mental-health needs, caused L.K. to suffer a mental injury as defined by the statute. We accordingly hold that the juvenile court's determination that L.K. was neglected under R.C. 2151.03(A)(6) was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

**{¶42}** Mother's sole assignment of error is sustained.

### C. Invited Error

**{¶43}** The GAL argues that if there was any error in the juvenile court's adjudication of neglect, it was invited by Mother because she agreed to allow the magistrate to determine, based on the stipulated facts, whether L.K. was neglected.

**{¶44}** "Under the invited-error doctrine, a party cannot take advantage of an error that the party invited or induced the trial court to make." *State v. Cephas*, 2019-Ohio-52, ¶ 24 (1st Dist.). Mother did not invite or induce the trial court to make an error of law regarding whether L.K. was neglected. Mother clearly did not agree that the stipulated facts established that she had neglected L.K. In this case, rather than having a trial in which testimony and evidence were presented, the parties agreed that L.K. was dependent and allowed the magistrate to determine on the stipulated facts whether L.K. was neglected or abused. Mother retained her ability to challenge any finding of neglect or abuse that the magistrate may have made.

### III. Conclusion

**{¶45}** For the reasons set forth in this opinion, the juvenile court's judgment is reversed to the extent it adjudicated L.K. neglected. However, because Mother

challenges no other part of the trial court's judgment, the order is affirmed in all other respects—including its adjudication of L.K. as dependent.

Judgment affirmed in part and reversed in part.

**BOCK** and **NESTOR, JJ.,** concur.