[Cite as *Hynd v. Roesch*, 2016-Ohio-7143.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| CARRIE M. HYND, ON BEHALF OF J.D.R., | : | **O P I N I O N** |
| | : | |
| Petitioner-Appellant, | : | **CASE NO. 2015-A-0063** |
| | : | |
| - vs - | : | |
| | : | |
| LEVI M. ROESCH, | : | |
| | : | |
| Respondent-Appellee. | : | |
| | : | |

Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 DR 0345.

Judgment: Affirmed.

*Hans C. Kuenzi,* Hans C. Kuenzi Co., L.P.A., Skylight Office Tower, 1660 West Second Street, Suite 660, Cleveland, OH 44113-1419 (For Petitioner-Appellant).

*William P. Bobulsky,* William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Respondent-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Carrie M. Hynd ("mother"), appeals the judgment of the Ashtabula County Court of Common Pleas, which denied her petition for domestic violence civil protection order against appellee, Levi M. Roesch ("father"), on behalf of J.D.R., the parties' two-year old son. At issue is whether the trial court committed plain error in adopting the magistrate's decision. For the reasons that follow, we affirm.

{¶2} The parties were divorced on September 24, 2014. Pursuant to their divorce decree, mother was designated as J.D.R.'s primary residential parent and father was granted parenting time pursuant to the court's standard parenting order.

{¶3} Mother filed the instant petition on October 2, 2015. On that date, an ex parte domestic violence civil protection order was granted, which was to be effective until January 3, 2016. The petition came on for final hearing on October 13, 2015.

{¶4} This is mother's second petition for domestic violence civil protection order filed on behalf of the parties' son. In the first case, filed earlier in 2015, the court found there was no basis for mother's allegations and dismissed the petition.

{¶5} During the hearing on the instant petition, father testified he had a weekend visit with J.D.R. between September 25, 2015 and September 27, 2015. He said that at the end of the visit, before dropping off the child with mother at the Geneva Police Department, the designated point of exchange according to the court's parenting order, he took him to Conneaut Township Park. Father said the child fell after he got off the merry-go-round. Father said the child cried for about 30 seconds, then seemed to be fine. He ran to the slide and continued playing for about ten more minutes. They then left the park and headed to Geneva to meet mother. Father said that J.D.R. displayed no discomfort while being placed in his car seat and he fell asleep during the ride to Geneva. Father said that when he carried the child to hand him to mother, he noticed the child seemed to be favoring his right arm. Father said that after the exchange, it occurred to him that the child may have injured his arm at the park.

{¶6} Mother testified that when father took J.D.R. out of his car seat, he seemed fussy and whiny, and she noticed a small bruise near his eye. Mother asked

father what was wrong with the child's eye. Father said there was nothing wrong with it. Father turned the child's head and saw mother was talking about a bruise on his cheek. Father told her the child had fallen at the park.

{¶7} After mother picked up the child, she went to her parents' home in Geneva. While J.D.R. was eating a snack, mother noticed the child grabbing a glass of water with his left hand. This was unusual because he is right-handed. She touched J.D.R.'s right arm and he started screaming. She removed his shirt and saw his right arm looked swollen. She drove the child to Cleveland Clinic and took him to the emergency room.

{¶8} Mother told staff at Cleveland Clinic that the child has a history of bruises that led to a protection order against father, without telling them that the court found her allegations to be without grounds. As a result of mother's report, the child underwent a "non-accidental trauma work-up;" was admitted to the hospital for three days; and was subjected to a full-body x-ray. Five police officers came to the child's room to investigate, but mother failed to provide any police reports to the magistrate.

{¶9} According to the medical records, an x-ray of J.D.R.'s right elbow taken on September 27, 2015, showed no visible fracture, but rather a joint effusion, or swelling, which "raise[d] the possibility of a [hidden] fracture." The child was found to be otherwise healthy and normal. The strength of the child's grip with his right hand was noted to be five out of a possible score of five and there was no visible abnormality of the bone of the right arm. The child's right arm was placed in a splint and sling.

{¶10} The Cleveland Clinic records from the child's October 2, 2015 follow-up visit state:

3

**{¶11}** He was seen in the hospital last week when there was concern for nonaccidental trauma. Ultimately he was cleared and no objective findings were noted except for a right elbow effusion. *No nonaccidental trauma was suspected in the child's discharge.* He's been in a splint since that time and feeling much better. Currently is here for follow-up of his right elbow. He's been comfortable in his splint. (Emphasis added.)

**{¶12}** Mother testified that father returned the child to her on prior occasions when she noticed he had a bruise. However, it was undisputed that the child is very active and had sustained bruises while in mother's care.

**{¶13}** Following the hearing, the magistrate issued a six-page, highly-detailed decision. The magistrate found that mother failed to prove that father committed any act that would have resulted in the child being an "abused child." The magistrate found that, based on father's testimony, *which the magistrate found was credible*, the child's playground injury was accidental. The magistrate found that the child did not display any behavior that would have caused father to believe he needed medical treatment until the child was being handed to mother. Although the child cried initially after he fell, he then ran to the slide and continued playing for about ten minutes before father and son left for Geneva. The child displayed no discomfort while being placed in the car seat and fell asleep on the way to Geneva.

**{¶14}** The magistrate thus recommended that mother's petition for domestic violence civil protection order be overruled and that the ex parte civil protection order be vacated. *Mother did not file any objections to the magistrate's decision.* Subsequently, the trial court adopted and approved the magistrate's decision, including its findings of fact and conclusions of law, and dismissed mother's petition and the ex parte domestic violence civil protection order.

4

{¶15} Mother appeals the trial court's judgment, asserting the following for her sole assignment of error:

{¶16} "The trial court erred in denying appellant's petition for a domestic violence civil protection order."

{¶17} A petitioner seeking a domestic violence civil protection order under R.C. 3113.31 bears the burden of proof by a preponderance of the evidence, and the decision to issue a civil protection order lies within the sound discretion of the trial court. *Kuhn v. Kuhn*, 11th Dist. Lake No. 2012-L-099, 2013-Ohio-5807, ¶23, appeal not allowed by Ohio Supreme Court at 2014-Ohio-2245, 2014 Ohio LEXIS 1245.

{¶18} As pertinent here, "domestic violence" is defined as "committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code[.]" R.C. 3113.31(A)(1)(c). As pertinent here, "abused child" is defined as any child: (1) who is endangered; (2) who exhibits evidence of any physical injury *inflicted other than by accidental means*; or (3) who, because of the acts of his parents, suffers physical * * * injury that harms or threatens to harm the child's health or welfare. R.C. 2151.031(B), (C), and (D). As pertinent here, "endangering a child" means creating "a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A).

{¶19} In general, "[t]he abuse of discretion standard is * * * the appropriate * * * standard to apply when reviewing a trial court's adoption of a magistrate's decision." *Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, ¶47. A party must file written objections to a magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period.

5

Civ.R. 53(D)(3)(b)(i). "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv).

{¶20} Mother does not argue the trial court failed to comply with any of the statutory requirements for a domestic violence civil protection order; rather, she challenges only father's credibility. She thus asserts a manifest-weight challenge. However, as noted above, she did not file any objections to the magistrate's decision.

{¶21} This court has stated that failure to file objections to an alleged error in a magistrate's decision waives the issue for appeal but for plain error. *Marshall v. Firster*, 11th Dist. Trumbull No. 99-T-0147, 2000 Ohio App. LEXIS 4589, *4-*5 (Sept. 29, 2000).

{¶22} A manifest-weight challenge to a magistrate's decision is asserted via an objection to that decision. *See In re Jones*, 1st Dist. Hamilton Nos. C-090497, et al., 2010-Ohio-3994, ¶32. The First District in *Jones* held that where an objection to a magistrate's decision challenged the manifest weight of the evidence without challenging any of the specific factual findings of the magistrate, such objection did not comply with the specificity requirement of Juv.R. 40(D)(3)(b)(ii), the Juvenile Rule counterpart of Civ.R. 53(D)(3)(b)(ii)). *Jones* at ¶32. The First District held that in these circumstances, Jones waived all but plain error. *Id.* Here, mother did not file an objection challenging the manifest weight of the evidence or any objections to the magistrate's specific findings of fact. Thus, she waived her manifest-weight challenge on appeal for all but plain error.

6

{¶23} In *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), the Supreme Court of Ohio set forth strict limitations on what constitutes plain error. First, there must be an error, i.e., a deviation from a legal rule. *Id.* Second, the error must be plain, i.e., the error must be an "obvious" defect in the proceedings. *Id.* Third, the error must have affected "substantial rights," i.e., the defendant must prove the outcome would have been different absent the error. *Id.* In *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, the Supreme Court of Ohio held the party asserting plain error has the burden of demonstrating its existence. *Id.* at ¶17.

{¶24} "[I]n regard to civil cases, the plain error doctrine applies only in 'the extremely rare cases involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Phillips v. Phillips*, 11th Dist. Ashtabula No. 2006-A-0037, 2007-Ohio-3368, ¶42, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶25} Mother does not acknowledge her failure to file any objections to the magistrate's decision. Further, she does not even attempt to demonstrate plain error on appeal. And, from our review of the record, we do not discern such error. For this reason, mother's assignment of error lacks merit.

{¶26} However, even if mother had filed a manifest-weight objection and specific objections to the magistrate's decision, her assignment of error would still lack merit. As noted, in such circumstances, the standard of review of the trial court's adoption of the magistrate's decision would have been abuse of discretion. *Harkey, supra*.

{¶27} Mother argues father gave inconsistent versions of the incident. She argues that, according to the report of Dr. Eva Love of the Cleveland Clinic, father told her he took the child to the Geneva Police Department for the exchange, but, because he arrived there one-half hour early, he took the child to Geneva Township Park for awhile. In contrast, father told Officer Cody Vadascio of the Geneva Police Department that the incident took place at Conneaut Township Park before he drove to Geneva. As to the location of the injury, the magistrate noted that Dr. Love did not mention in her report the name of the park at which father said the accident happened, so there was no inconsistency on this point. As to the sequence of events, the magistrate noted that father testified the child's fall occurred at Conneaut Township Park before they went to Geneva so Dr. Love must have misunderstood him. Thus, the magistrate found that there was no inconsistency as to the location of the accident and that Dr. Love misunderstood father's statement to her concerning the sequence of events.

{¶28} Mother also argues that father told Officer Vadascio that after J.D.R. fell, he, i.e., father, knew his son was hurt. Thus, mother argues, father violated his duty of care by not immediately providing the child with medical care. As a result, mother argues J.D.R. was an abused child. However, father merely "acknowledged" the injury when the officer questioned him on the phone about the accident. This is consistent with father's testimony that the child was favoring his right arm when he carried him over to mother and that it occurred to him *after the exchange* that the child might have injured his arm. Thus, contrary to mother's argument, father did not tell the officer he knew any facts that would have imposed on him a duty to provide medical attention to the child.

8

{¶29} Next, mother argues that father's testimony that he did not know J.D.R. suffered any significant injury as he did not exhibit any signs of pain or discomfort is not credible since the child sustained a fracture of the right arm. However, it is well-established that the trier of fact is entitled to determine the credibility of the witnesses. *Stovall v. Streetsboro*, 11th Dist. Portage No. 2006-P-0077, 2007-Ohio-3381, ¶67. The trier of fact is entitled to believe all, part, or none of the testimony of any witness. *Id*. The trier of fact's decision on the credibility of witnesses is owed deference since it is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of witnesses. *Id*., citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The magistrate was therefore entitled to believe father and to discount mother's argument.

{¶30} Moreover, contrary to mother's argument, according to the medical records, the x-rays *did not disclose any fracture*. The radiology note for the initial x-ray stated the presence of soft-tissue swelling raised the *possibility* of a hidden right humeral fracture, but subsequent films revealed no change. Thus, the medical records did not show that J.D.R. sustained any fracture, only that there was some swelling, which indicated a possible hidden fracture. Further, the medical records showed that the strength of J.D.R.'s grip with his right hand was five out of a possible five. Also, mother failed to present any evidence contradicting father's version of events or any expert testimony regarding the probable level of the child's pain immediately after the fall. In fact, mother's testimony corroborates father's. She testified that, while father took the child out of his car seat and brought him to her, the child only whined and fussed. He did not cry, scream, yell, or exhibit the type of behavior one would expect

9

from a child who recently broke his arm. Further, she said that she did not notice any problem with the child when she took him to her parents' home. In fact, there was no problem until she touched his right arm while he was eating and he started screaming. Thus, the magistrate's finding that J.D.R. did not display any behavior that would have caused father to believe he needed medical treatment until he was handed to mother was supported by the record.

{¶31} Further, the magistrate was also entitled to consider mother's credibility. She takes the child to the hospital whenever he comes home from visitation with any kind of bruise, although mother admitted the child is very active and has fallen and bruised himself while with her. With respect to the present incident, mother told Cleveland Clinic staff about the child's past bruises, which, she said, resulted in a protection order against father, without telling them the protection order was found by the court to be groundless. When mother finally made a police report of the current incident five days later on October 2, 2015, she did not tell the police that on the child's discharge on September 30, 2015, the hospital concluded that no nonaccidental trauma was suspected. Further, after a previous weekend visit with father, on Sunday, July 5, 2015, mother took the child to Cleveland Clinic complaining the child was dehydrated and had lost weight. The hospital report showed the child appeared well; he was not notably dehydrated; his mucous membranes were moist; and he had lost just one to two pounds. Despite this, mother had doctors call father to tell him how many calories the child should eat in one day. *Mother admitted she now takes the child to the doctor's office before and after each weekend visit with father.* In a psychological review in April 2014, mother told forensic psychologist, Dr. Farshid Afsarifard, that she believed it

would be in the child's best interests if father was not involved in J.D.R.'s life at all. She told that doctor that father and his family were abusive to the child and were "doing strange things to him to hurt him" because they did not use the type of diapers she wanted them to use and they had given him Tylenol. The record shows that father has taken full advantage of the limited visitation he has had with the child, and nothing in the record suggests that father ever did anything to harm him.

{¶32} Thus, even if mother's manifest-weight challenge was not waived by her failure to file objections to the magistrate's decision, the court's judgment adopting the magistrate's decision would have been supported by the record and therefore not an abuse of discretion.

{¶33} For the reasons stated in this opinion, the assignment of error lacks merit and is overruled. It is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.

11