[Cite as *Hallisy v. Hallisy*, 2023-Ohio-2923.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| ANITRA HALLISY, | **CASE NO. 2022-G-0048** |
| Petitioner-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| PAUL HALLISY, | |
| Respondent-Appellee. | Trial Court No. 2022 DV 000307 |

**O P I N I O N**

Decided: August 21, 2023
Judgment: Affirmed

*Kelley R. Tauring*, *Nicole A. Cruz* and *Joseph G. Stafford*, Stafford Law Co., L.P.A., North Point Tower, 1001 Lakeside Avenue, Suite 1300, Cleveland, OH 44114 (For Petitioner-Appellant).

*Deanna L. DiPetta*, Meyers, Roman, Friedberg & Lewis, 28601 Chagrin Boulevard, Suite 600, Cleveland, OH 44122 (For Respondent-Appellee).

*Gary S. Okin*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (Guardian Ad Litem).

MATT LYNCH, J.

{¶1} Petitioner-appellant, Anitra Hallisy, appeals the judgment of the Geauga County Court of Common Pleas, denying her Petition for a Domestic Violence Protection Order against respondent-appellee, Paul Hallisy. For the reasons that follow, we affirm the decision of the lower court.

{¶2} On May 27, 2022, Anitra filed a Petition for Domestic Violence Civil Protection Order against her husband, Paul, on behalf of herself and her two children,

C.H. and M.H. The Petition alleged that Paul had physically assaulted C.H. and had engaged in a pattern of threatening abuse during their marriage. An ex parte hearing was held on that date, and a Magistrate's Order was issued on May 31, stating the magistrate's finding that Anitra failed to meet her evidentiary burden and declining to issue an ex parte order.

{¶3} A full hearing was held before the magistrate on June 13 and 14, 2022. The following pertinent testimony and evidence were presented:

{¶4} On May 15, 2022, C.H., who was 11 years old, was breaking down boxes in his garage with his younger brother, M.H., at the request of their father, Paul. According to C.H., M.H. began crying, Paul came outside, and he picked up C.H. "with two hands by the throat." Paul said to C.H.: "I better not come out here and find him crying again." C.H. testified that his father held him above the ground by the neck for about 20 seconds, causing him to be unable to breathe, and then threw him into the side of a garbage can. After his father went inside, C.H. took a picture of his neck and sent it to his mom. C.H. testified that he felt terrified of his father and is still afraid. His mother subsequently called the police. C.H. explained that, although he usually gets As and Bs, his grades had declined since the incident. When asked about any other incidents of abuse, he discussed a prior incident where his father hurt him by hugging him too tightly.

{¶5} On cross examination, C.H. explained that he had testified M.H. was crying because he did not want to break down boxes, but in the police report, he stated that M.H. was crying because he was hot and tired. C.H. was asked the following question: "Isn't it true that you and your mom have been talking about making these kinds of allegations against your dad for a while now?" C.H. responded, "Yeah."

2

{¶6} Anitra Hallisy testified that Paul is her husband and the two were involved in divorce proceedings which were pending at the time she sought the protection order. She described Paul as "emotionally and mentally abusive" and stated that he had yelled at and threatened her. She described an incident in 2019 where he threatened her with a pool broom.

{¶7} Regarding the May 15 incident, Anitra testified that she had received a message from C.H. which stated his father had picked him up by the neck and thrown him into a garbage can. A picture attached to the message showed redness on his neck. She was not present at the time but drove home, driving on the highway for approximately 30 minutes before calling the police to report the incident. When she arrived home, C.H. explained to her that his father had picked him up off the ground and he felt that he could not breathe. She described C.H. as appearing very scared.

{¶8} Anitra described another incident, which occurred on May 24, 2022. She and the children were at the family's residence when Paul returned home. According to Anitra, when she and the children attempted to leave, he cursed at them, stated that they were not "going anywhere" and hit the vehicle window, and tried to get M.H. out of the car. She testified that the children are afraid of what Paul will do to them and she is afraid for her sons. She explained that he would yell at the kids and "spit in their face," although she later clarified that this was a result of being so angry that spittle came out of his mouth and was not an intentional act. She testified that he did not physically abuse her.

{¶9} Rachel Cagwin, a Bainbridge Township police officer, responded to a May 15 call reporting the conduct alleged by C.H. When she arrived, Anitra described that Paul had grabbed C.H. by the neck and C.H. then "reiterated" this version of events.

3

Cagwin did not observe any injuries to C.H. and he did not seek medical treatment. Cagwin believed that, if the incident had occurred the way C.H. described it, there would have been marks on his neck when she arrived. She stated that the children's stories of the events were not in sync and that M.H. indicated his brother was not grabbed by his neck but by the arms. She testified that C.H. showed "obvious signs of deception." No charges were brought against Paul.

{¶10} Paul testified that he did not grab C.H. by the neck. On May 15, he went to the garage because he heard the children arguing and M.H. stated C.H. hit him. Paul testified that he grabbed C.H. from the side of his shoulder. He testified that he never struck his children in the face or had shaken them. He believed that Anitra coached C.H. to make up the allegation about grabbing him by the neck. He denied attempting to prevent Anitra and the children from leaving the home on May 24.

{¶11} On August 25, 2022, a Magistrate's Decision was filed, finding that the petitioner failed to present evidence sufficient to support a finding that she and the children were in danger of domestic violence. In the findings of fact, the magistrate found that Anitra's and C.H.'s testimony were not credible, that C.H. "testified he is 'terrified' of Respondent, but spoke with absolutely no emotion"; C.H. was asked if he and his mother had talked about making allegations against his father for a while, said yeah and "started to cry"; and that C.H. "testified with no emotion, except crying, and his testimony appeared to be rehearsed." The magistrate also found that Anitra "coached [C.H.] to make these allegations against Respondent." Cagwin and Paul were found to have testified credibly.

{¶12} Anitra filed Objections to the Magistrate's Decision on September 8, 2022. She argued that the evidence did not support the finding that C.H. and Anitra lacked

4

credibility or that C.H. was coached. She also argued that the magistrate erred in failing to permit evidence of past domestic violence and by preventing her counsel from properly cross-examining Paul. Paul filed a Brief in Opposition. In an October 28, 2022 Order, the court found no error in the magistrate's decision, adopted the decision, and denied and dismissed the request for a Domestic Violence Protection Order.

{¶13} Anitra timely appeals and raises the following assignments of error:

{¶14} "[1.] The trial court erred as a matter of law and abused its discretion by arbitrarily limiting evidence and testimony of the appellant's fear of imminent, serious, physical harm by the appellee.

{¶15} "[2.] The trial court erred as a matter of law and abused its discretion by violating the appellant's right to due process of law and limiting her cross-examination of the appellee at trial.

{¶16} "[3.] The trial court erred as a matter of law and abused its discretion in denying the appellant's petition for domestic violence civil protection order."

{¶17} In her first assignment of error, Anitra argues that the lower court erred in not permitting evidence of Paul's history of abusive acts, including threats of use of physical force against both her and the children. She contends that such evidence was relevant and necessary to establish the existence of fear justifying a protection order.

{¶18} Paul contends that Anitra failed to proffer evidence to demonstrate what the testimony in question would have been. He further contends that Anitra is seeking to include any testimony without limitation and that admission of evidence must be considered on a case-by-case basis.

5

**{¶19}** "Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶20}** We will first address whether the proffer was adequate to allow this court to determine whether the lower court properly excluded the evidence in question. "[A] party may not predicate error on the exclusion of evidence during the examination in chief unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party *and* (2) the substance of the excluded evidence was made known to the court by proffer *or* was apparent from the context within which questions were asked." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 113, citing *State v. Gilmore*, 28 Ohio St.3d 190, 503 N.E.2d 147 (1986), syllabus; Evid.R. 103(A)(2). "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant." *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362, ¶ 37 (11th Dist.). "[A]n offering party must show what a witness was expected to testify to and what that evidence would have proven or tended to prove." (Citations omitted.) *In re L.R.S.*, 11th Dist. Portage Nos. 2016-P-0050 and 2016-P-0051, 2017-Ohio-2604, ¶ 19. "The proffer of the expected testimony must be sufficient to place the reviewing court on notice of what the testimony would have been." *Id.* A proffer must contain specific information that provides "an appropriate basis for review" and cannot consist of

6

"speculation and general descriptions." (Citations omitted.) *State v. Robinson*, 3d Dist. Allen No. 1-19-79, 2020-Ohio-4880, ¶ 32-33.

{¶21} In her brief, Anitra points to various incidents that she would have testified to had she not been prohibited from doing so and described them in detail: Paul became enraged when she denied his sexual advances and stated that he would retaliate with physical harm if his advances were denied; he blocked her from exiting a closet and threatened her when she refused to have sex with him; he threatened to strike C.H. with a broom for making mistakes during karate practice; and he physically abused M.H. in November 2020 by throwing dishware at him and striking the child.

{¶22} Anitra references a proffer made in regard to these items. The following proffer was given at the conclusion of the trial: the record "would indicate that there had been a history of abusive conduct by the Respondent, including both threats of force, as well as threats of sexual force and retaliation for a failure to satisfy those threats" and "[t]here was further threats against the children, both with objects that could be considered as weapons for failure to satisfy the father, Respondent, Mr. Hallisy's instructions to the children, as well as that was unjustified in terms of any type of discipline action or other conduct Petitioner further sets forth pursuant to 3331 (sic)." This proffer does not include the specific details of the incidents described in Anitra's brief. A broad allegation that there were threats makes it difficult to determine the specific basis for the court excluding testimony of particular incidents. We do observe, however, that during the ex parte hearing, significant testimony was given by Anitra, alleging that Paul had threatened the children with a broom for performing karate incorrectly, that he threw a bowl at M.H. and spanked him for failing to perform a baseball activity to his standard, implied there would

7

be consequences if Anitra did not engage in sexual activity with him, and blocked her from leaving their closet. This testimony mirrors the allegations raised in the brief and does provide this court with some understanding of the testimony that would likely have been provided had it been admitted by the court. We will proceed to consideration of the merits of Anitra's argument to the extent possible from a review of the record before this court.

{¶23} Anitra argues that the evidence outlined above was improperly excluded as it was relevant and tended to demonstrate the issue of whether the parties were in fear for the purposes of a finding of domestic violence.

{¶24} "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "The general principle that guides admission of evidence is that '[a]ll relevant evidence is admissible.'" *State v. Jones*, 2022-Ohio-3978, 200 N.E.3d 585, ¶ 124 (11th Dist.), citing Evid.R. 402.

{¶25} "R.C. 3113.31 requires a petitioner in a protection order to allege 'that the respondent engaged in domestic violence against a family or household member.'" *Jones v. Jones*, 2023-Ohio-989, __ N.E.3d __, ¶ 15 (11th Dist.), citing R.C. 3113.31(C)(1). After a full hearing, "the court may grant any protection order * * * to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1). Pursuant to R.C. 3113.31(A)(1)(a), domestic violence includes (i) "[a]ttempting to cause or recklessly causing bodily injury"; (ii) "[p]lacing another person by the threat of force in fear of imminent serious physical harm"; and (iii) "[c]ommitting any act with respect to a

8

child that would result in the child being an abused child." Anitra argues that it was necessary to present evidence of past acts in order to demonstrate the fear of harm that resulted from the acts giving rise to her petition.

{¶26} It has been observed that "[t]he purpose of the civil protection order is not to address past abuse" and "[t]he statutory criterion to determine whether or not to grant a civil order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 11, citing *Weber v. Weber*, 2d Dist. Greene No. 2010-CA-40, 2011-Ohio-2980, ¶ 34 (prior domestic violence "does not constitute enough evidence from which it may be inferred that [the petitioner] is presently in danger of domestic violence"). "Evidence of past abuse, however, is relevant and may be an important factor in determining whether there is a reasonable fear of further harm." (Citation omitted.) *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148, ¶ 38; *Spaulding v. Spaulding*, 6th Dist. Lucas No. L-20-1102, 2021-Ohio-533, ¶ 12 ("[t]he reasonableness of the fear felt by the petitioner is determined with reference to the petitioner's history with the respondent") (citation omitted).

{¶27} With the foregoing in mind, we recognize that it was appropriate for the lower court to determine whether evidence of past acts was relevant to the present fear of physical harm, particularly in relation to Anitra as her claim for a protection order was based upon the threat of force. In relation to the court's prohibition on testimony regarding threats resulting from failure to engage in sexual acts with Paul, Anitra testified as follows:

Counsel: "During the term of the divorce, and prior during your marriage, has Mr. Hallisy threatened you?

Anitra: He has.

9

Counsel: In what ways?

Anitra: Um, if he doesn't get his way, or things aren't going the way that he wants, he'll say, you know, this better happen or else. Um, he's forced himself or tried to like in sexual ways. * * * I came home from a root canal appointment, and I said that I was going to go and see my sister. And he said * * * Are you going to [engage in different sex acts with me]? And I said neither.

Counsel: And then what happened?

Anitra: Then a couple weeks later, he asked if I was going to have sex with him.

Paul's counsel objected and the magistrate sustained the objection, stating "I am not quite understanding this. It seems to me like this is not that relevant. I'm not getting threatened out of this. So I'm just not getting it. So come on, can you move onto something of substance, please?" An objection to a subsequent question relating to threats and sexual acts was also sustained and counsel was asked to "move on."

{¶28} It is evident from this exchange that the court could not discern the relevance of Anitra's testimony where she did not state specific threats or harm that occurred. It requested that the questioning lead to matters demonstrating a threat. It did then prevent testimony after a follow up question about whether she had been threatened in relation to sexual acts. While it is true that threats relating to sexual activity could potentially demonstrate fear of harm, it appears the court did not find Anitra's testimony on this issue demonstrated fear. We do not find that this rises to the level of an abuse of discretion.

{¶29} As to the incident of trapping Anitra in a closet, it is not clear that she was specifically prohibited from testifying about this. She did not begin to provide testimony as to this incident and the court did not stop her from testifying specifically as to Paul's

Case No. 2022-G-0048

actions of essentially holding her captive. Further, we recognize that Anitra was permitted to testify as to an incident where Paul threatened to hit her with a pool broom to demonstrate past threatening activity, so she was not prohibited from presenting all testimony regarding Paul's past actions toward her.

{¶30} Anitra also argues that the court excluded testimony relating to past incidences of threatened or physical abuse against the children, i.e., the throwing of a bowl and threats with a broom during karate. Initially, we observe that, regardless of past threats against C.H., the allegation for domestic violence relates to an act causing physical harm and, thus, prior threats would not be necessary to prove fear where an act of domestic violence under R.C. 3113.31(A)(1)(a)(i) was committed. Nonetheless, we will consider this issue for the purposes of determining whether any act of domestic violence under R.C. 3113.31(A)(1)(a)(ii) occurred.

{¶31} Anitra's counsel asked her: "Based on your experience and interactions with Mr. Hallisy, has he threatened the children before?" An objection was sustained and the magistrate stated: "We're here on one specific issue." This statement appears to have rejected the presentation of testimony of any prior threatening incidents against the children. Anitra argues this is contrary to the holding in *M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819 (8th Dist.), which rejected a blanket policy excluding all events occurring more than one year prior to the filing of a civil protection order and held that because "[e]ach domestic violence case is unique[,] * * * [t]he trial court should evaluate each proceeding on a case-by-case basis to determine what is and is not relevant." *Id.* at ¶ 80. In the present matter, the court prevented testimony regarding past threats made against

11

the children without further development of when they occurred or what those threats might be.

**{¶32}** Even presuming the court should have allowed evidence of past incidents of threats toward the children, we do not find error warranting reversal as there was no prejudice or effect on the substantial rights of the petitioner. "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). Further, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ.R. 61. "In reviewing whether a substantial right of a party has been affected, the reviewing court must decide whether the trier of fact would have reached the same decision had the error not occurred." (Citation omitted.) *Degrant v. Degrant*, 2020-Ohio-70, 151 N.E.3d 61, ¶ 28 (11th Dist.).

**{¶33}** The magistrate explicitly found that Anitra and C.H. lacked credibility and that Anitra coached his testimony. These findings were based on evidence in the record, including the testimony of Officer Cagwin about C.H. being deceptive and having a story inconsistent with his brother, as well as C.H.'s demeanor in court and response that he and his mother had previously discussed making an allegation of abuse against Paul. The magistrate made it evident that she did not believe the testimony regarding the abuse allegations. There is nothing in the record to indicate that the magistrate would have believed Anitra's testimony regarding other allegations of abuse or threats against the children. We do not find that the admission of Anitra's testimony about additional past

12

threats would have led to a different result where the court, based on the record and its credibility determinations, found that the main allegation of abuse presented was fabricated by her.

{¶34} The first assignment of error is without merit.

{¶35} In her second assignment of error, Anitra argues that she was improperly denied the right to ask Paul leading questions on cross-examination, which resulted in prejudice because it limited the questions she could ask to elicit responses regarding his actions.

{¶36} Pursuant to Evid.R. 611(C), "[o]rdinarily leading questions should be permitted on cross-examination." The magistrate's reason for preventing Anitra from using such questioning in the cross-examination of Paul is unclear. During Paul's cross-examination, the magistrate stated, "Okay. I'm going to ask you to not ask leading questions. * * * I don't want leading questions," to which Anitra's counsel noted an objection. We are unaware of a legal basis for denying leading questions in these circumstances and "hearings on a petition for a DVCPO are subject to the rules of evidence." *Latz v. Latz*, 11th Dist. Geauga No. 2020-G-0241, 2020-Ohio-5139, ¶ 90.

{¶37} As observed above, however, for an error to constitute reversible error, it must affect a "substantial right," i.e., the trier of fact would have reached a different decision had the error not occurred. *Degrant*, 2020-Ohio-70, at ¶ 28; Civ.R. 61. We do not find that to be the case.

{¶38} Although the court ruled that leading questions were not permitted in the cross-examination of Paul, Anitra's counsel was still allowed to ask many leading questions: "Sir, just recently within the past two months, you have threatened to beat your

13

family's pet in front of the children, haven't you?"; "So sir, you couldn't have enrolled him in Martial Arts classes to help with discipline if there was no behavioral issues at the time, correct?"; "And you stuck a finger at your wife's window and said, 'F' that, you guys aren't going nowhere?"; "And you attempted to get into the vehicle as they were leaving, correct?" Other similar leading questions were also permitted. Further, while Anitra argues she was denied a fair right to cross-examination, counsel was permitted to ask detailed questions about all of the facts surrounding the alleged instance of domestic violence on May 15 and was not otherwise limited in the ability to cross-examine Paul. She does not make clear what particular questions she was unable to ask or what testimony she may have been prevented from obtaining, particularly where Paul repeatedly denied any acts of domestic violence. *See State v. Irwin*, 184 Ohio App.3d 764, 2009-Ohio-5271, 922 N.E.2d 981, ¶ 85-87 (7th Dist.) (any error in refusing to grant permission to ask leading questions was harmless where counsel "nonetheless" used leading questions, questioned the witness for an extended period of time with "the most important questions" relating to whether he had confessed to criminal acts, and the form of the questions would not have made a difference in the witness' answers).

{¶39} In addition, as addressed above, the court's determination about whether domestic violence occurred turned on its decision that Anitra and C.H. were not credible. This was based on a multitude of factors as outlined above. Allowing additional leading questions in Paul's cross-examination would not have led to a different result where the court found the testimony presented in support of a finding that a domestic violence incident occurred to be lacking in credibility.

{¶40} The second assignment of error is without merit.

14

{¶41} In her third assignment of error, Anitra argues that the evidence and testimony showed that Paul engaged in "substantial acts of domestic violence against C.H. in the presence of M.H.," and threatened her.

{¶42} "When a trial court finds, by a preponderance of evidence, that the petitioner or the petitioner's family is in danger of domestic violence, the trial court may grant a protection order to bring about a cessation of the domestic violence." *DiVincenzo v. DiVincenzo*, 11th Dist. Lake No. 2022-L-052, 2023-Ohio-570, ¶ 27; *Hynd v. Roesch*, 11th Dist. Ashtabula No. 2015-A-0063, 2016-Ohio-7143, ¶ 17 ("[a] petitioner seeking a domestic violence civil protection order under R.C. 3113.31 bears the burden of proof by a preponderance of the evidence"). "An appellate court will not reverse a trial court's decision to grant a civil protection order absent an abuse of discretion." *DiVincenzo* at ¶ 27; *Tredenary v. Fritz*, 11th Dist. Lake No. 2017-L-045, 2017-Ohio-8632, ¶ 23.

{¶43} For a domestic violence protection order to issue, the party seeking the order must demonstrate commission of an act of domestic violence including (i) "[a]ttempting to cause or recklessly causing bodily injury"; (ii) "[p]lacing another person by the threat of force in fear of imminent serious physical harm"; or (iii) "[c]ommitting any act with respect to a child that would result in the child being an abused child." R.C. 3113.31(A)(1)(a).

{¶44} In support of her argument, Anitra contends that there is testimony in the record to establish that C.H. was abused when Paul grabbed him by the throat and did so in the proximity of M.H., resulting in M.H. also being an abused child, citing *M.E. v. J.M.*, 8th Dist. Cuyahoga No. 107273, 2019-Ohio-1437, ¶ 24 (finding that a child was an "abused child" by virtue of her proximity to acts of physical violence). She further

15

Case No. 2022-G-0048

observes that her testimony established that the children are afraid of Paul and that he had been threatening and aggressive toward her in the marriage. She contends that Paul's denials were self-serving and he "failed to set forth any competent, credible evidence that rebutted the testimony that the Appellant and the minor children are in fear of substantial harm of the Appellee."

{¶45} To the contrary, there was evidence in the record rebutting Anitra and C.H.'s testimony regarding abuse and fear of harm. Paul testified that he did not physically abuse his children and denied choking C.H. Officer Cagwin, who responded to the scene of the alleged incident, observed no injuries establishing that C.H. was choked, observed that he showed "obvious signs of deception," and noted that M.H. provided a version of events that differed from C.H.'s. Perhaps most significantly, C.H. affirmed under oath that he and his mother had been talking about "making these kinds of allegations against [Paul] for a while now" which indicates that these allegations may be fabricated. These facts contradict the version of events provided by Anitra and C.H.

{¶46} The findings in this case turned primarily on issues of credibility, given the two conflicting versions of events. "'Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.'" (Citation omitted.) *In re D.H.*, 11th Dist. Ashtabula No. 2017-A-0081, 2018-Ohio-630, ¶ 18. The magistrate made specific findings that Anitra and C.H.'s testimony lacked credibility, emphasizing that C.H.'s testimony appeared rehearsed and he was coached by Anitra. We are not in the position to reject these findings or substitute our own judgment, particularly where the record indicates that, after C.H.'s admission that he had spoken with his mother about making allegations against his father, it appears he became emotional, indicated by

16

Case No. 2022-G-0048

counsel's request that he be given "a moment to * * * gather himself" immediately after the question. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). In light of the outright rejection of Anitra and C.H.'s allegations, it can hardly be advanced that Paul failed to rebut their testimony or that the petitioner's burden was met by a preponderance of the evidence.

{¶47} The third assignment of error is without merit.

{¶48} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas, denying Anitra's Petition for a Domestic Violence Protection Order, is affirmed. Costs to be taxed against appellant.


JOHN J. EKLUND, P.J.,

MARY JANE TRAPP, J.,

concur.